## BLANCHARD and others *vs.* WESTERN UNION TELEGRAPH COMPANY.

A telegraph company, authorized to lay its cable across a navigable river, but in a way not "to injuriously interrupt navigation," has, to that extent, the protection of the statute, in laying its cable; and such protection will cover all necessary and absolute inconveniences resulting from the exercise of the legal right.

If due care be used in laying the cable, in proper position, on the bottom of the river-bed, it will not be deemed a nuisance, as an interruption of navigation.

But where a cable, as placed by a company, did not lie on the river-bed, but was within reach of vessels, such as usually navigated the river at that place, and the plaintiffs' vessel caught upon it, and was injured; *held* that this was an obstruction to navigation, not necessary to carry out the purpose for which the company was organized; and that the company was liable for the damages occasioned thereby.

APPEAL, by the defendant, from a decision in favor of the plaintiff, made at Special Term, on a trial by the court without a jury.

The action was brought by the plaintiffs, as joint owners of a steam towboat, navigating the Hudson river, for damages received by said boat by running foul of a telegraph cable of the defendant which crossed the river at a railroad bridge at Albany.

This court, at General Term, reversed the judgment of the Special Term, and granted a new trial, BOARDMAN, J., delivering a brief opinion in favor of reversal,

which was concurred in by MILLER, P. J. (*See* 3 *Thomp. & C.*, 775.) BOCKES, J., delivered the following dissenting opinion, which was approved and adopted by the Court of Appeals, on reversing the judgment of the General Term, ALLEN, J., saying: "The judgment at Special Term is well vindicated and sustained, by the very satisfactory dissenting opinion of Judge BOCKES, in the Supreme Court," &c. (See *S. C.*, 60 *N. Y.*, 513.)

*By the Court*, BOCKES, J. The decision of this case depends upon the question, whether the facts are found correctly by the learned judge before whom the cause was tried. There can be no doubt, I think, in regard to the law of the case. The defendant's company were authorized to lay the cable across the Hudson river; but in a way not "*to injuriously interrupt*" navigation. To this extent the company had the protection of the statute in laying the cable; and such protection would cover all necessary and absolute inconveniences resulting from the exercise of the legal right. Thus if the navigation of the river was made in some degree inconvenient by reason of an absolute necessity resulting from the laying of the cable, such mere inconvenience would not be deemed in law an injurious interruption to navigation, amounting to a public nuisance. Where authority is given to construct a bridge with piers, there is of necessity some obstruction to the free use of the stream contemplated. Navigation may be, and generally is, to some, extent interrupted by the supporting structures; for care and prudence must be exercised to avoid them. So it has been well remarked, that every bridge having piers in the channel may be said to be an obstruction, interrupting navigation, but it is not necessarily a nuisance. Public convenience and the necessities of trade often require the surrender of individual rights. At the present day the speedy transmission of intelligence is a necessity; and the partial and very limited interruption

to navigation attendant upon the laying of telegraphic cables across or under navigable waters must be permitted, although some inconvenience results. It was held, nearly a half century since, that a free navigation was not to be understood as a navigation free from such partial obstructions and impediments as the best interests of society might render necessary; and more recently it was asserted in sound reason, that what the public convenience imperatively demanded could not be called a public nuisance, even though it should cause some inconvenience, or affect private interests. Undoubtedly due care must be observed in the construction of these necessary and partial impediments to navigation, to the end that there shall be no abuse of the statutory authority. Piers which are to be the support of bridges, and cables used for telegraphing, must be properly located with reference to the convenience and safety of passing vessels. They must be so placed as not needlessly to offer obstructions. These views are fully supported by the cases cited by the learned counsel for the defendant. Therefore, if it be true that the cable which caused the injury here complained of was laid with due care, in proper position, on the bottom of the river-bed, the plaintiffs had no cause of action. The defendant's company, in that case, had neither done, nor suffered any wrongful act; for, so laid and maintained, the cable would not "injuriously interrupt the navigation" of the river, within the fair and reasonable construction of the law, which permitted them to carry their cable across the waters of the state.

We are now brought to an examination of the findings of fact by the learned judge who heard and decided the case. He found, in substance, that the cable was not laid on the bottom of the river, as it might and should have been; that as laid, it injuriously interrupted navigation, and caused the injury complained of, which occurred without the fault of the plaintiffs, their agents or

servants. Briefly stated, he found that the cable was improperly laid; and as laid, was a public nuisance. · If these findings of fact are supported by the proof, a right of action was undoubtedly established. After a careful examination of the evidence, I am of the opinion that the facts are well found.

The evidence, as it seems to me, is abundant to show that the cable was improperly laid, or was out of place, and had so remained out of place for a long period of time. According to the evidence submitted, the cable did not lie on the river-bed, but was within reach of vessels, such as usually navigated the river at that locality. At least, it was proved that the plaintiff's vessel would strike the cable when passing, drawing from six to seven and a half feet of water, and this occurred repeatedly. The vessel would strike and slip over. Three witnesses so testify. Now here was certainly an obstruction to navigation ; not necessary to carry out the purpose for which the defendant's company was organized ; for the cable could readily be laid beyond the reach of passing vessels. Consequently navigation was "*injuriously*" interrupted, within the fair meaning and intendment of the law under which the defendant claims protection.

It is not the multiplicity of actual and individual injuries resulting from a matter complained of, that constitutes it a public nuisance. In the case of navigable waters, an obstruction may have been often passed with safety through good fortune, or the exercise of especial care and prudence, and yet the obstruction would in law be deemed a public nuisance, to be abated even before injury from it had actually occurred.

If calculated to produce injury to passing vessels, the obstruction would be held a nuisance, in determining the rights of parties, in case it caused but a single injury. So, in point of fact, a thousand vessels might pass an obstruction in safety, and yet a right of action exist as

to the next one, if injured thereby; and that, too, on the ground that the obstruction was in law a public nuisance. The fact that other vessels passed in safety would be evidence that the thing or subject complained of was not an obstruction, or could be avoided with reasonable attention and care, when the party, as in the present case, had a right to insist upon the exercise of prudence in order to avoid it. But the question would still be open in case of a single injury, whether navigation was not injuriously interrupted.

The right of action for the injury complained of was established, I think, unless it was made to appear that the plaintiffs' misconduct or negligence contributed to it.

It seems that the vessel was such as usually navigated the river at the locality where the injury occurred; and for aught that appeared, was in good condition. The plaintiffs had a right to the use of the waters at that point, and certainly were not negligent in attempting to pass the cable — especially as they had frequently before passed in safety, notwithstanding the cable was often touched or struck. At all previous times the vessel had slipped over uninjured, and there was nothing to indicate present danger. But, it is said, the fact that she did not then pass without injury, proves that she was unfit to make the attempt. This presupposes that the defendant had a right to float the cable, or to permit it to rake the keels of passing vessels; and that the owners were bound to construct their vessels so as to avoid injury from this cause. In the first place, the defendant had no right to rake the keels of passing vessels with the cable, for the very obvious reason that it could be readily so placed and retained in position as to avoid such necessity. But let it be conceded that the plaintiffs were bound to put their vessel in condition to allow its keel to be raked without danger of injury, there is no evidence that it was not so to their knowledge. To defeat the action on this ground, it should have been shown

Blanchard *v.* Western Union Telegraph Company.

that the plaintiffs had knowledge of the defect in the vessel, which contributed to the injury, or that the defect had continued so long that, with proper attention, they would have discovered it. (*Sherman* v. *Western Trans. Co.*, 62 *Barb.*, 150.) In this case MULLIN, J., says: "The defective condition of the bottom of the boat may not have existed sufficiently long to have imposed any duty in reference to it;" and that "if its condition was not known, or had not existed long enough to charge the party with notice of the defect," there was no negligence; and he adds, "negligence is never presumed." There is not any direct evidence in this case that the injury complained of resulted at all from any defect in the plaintiffs' vessel. That it did, is but matter of inference; not a certain existing fact. True, if entirely smooth there could be no catch, but a very small inequality in the surface, not amounting to a substantial imperfection or defect, might, when the vessel was slipping over a strained cable, operate as a catch; especially if aided by a very trifling cutting away by friction. According to the evidence the vessel was properly built, and was in good repair when the injury occurred. She was, too, in proper place, and was run with due care. For aught that appears, the sole cause of the injury was the improper position and action of the cable.

The findings of the learned judge are, as I think, well sustained by the proof, and the judgment should be affirmed, with costs.

[THIRD DEPARTMENT, GENERAL TERM at Albany, May 7, 1874. *Miller, Bockes* and *Boardman*, Justices.]